**EMPIRE OF AMERICA FEDERAL SAVINGS BANK, et al.**

v.

**UNITED STATES of America.**

**Civ. A. No. CA4–88–805–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Nov. 29, 1990.

As Amended Feb. 1, 1991.

G. Tomas Rhodus, Norman A. Lofgren, Brice & Mankoff, Dallas, Tex., for plaintiffs.

Richard B. Vance, Asst. U.S. Atty., Fort Worth, Tex., Mary C. Vance, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

McBRYDE, District Judge.

This case is being tried, pursuant to the agreement of plaintiffs, Empire of America Federal Savings Bank and Control Manage- ment Restaurant Corporation, and defendant, United States of America, on stipulated facts set forth in the pretrial order, the supplemental stipulation of facts filed October 17, 1990, and the second supplemental stipulation of facts filed November 19, 1990. The stipulated facts are as follows:

1. Plaintiff Empire of America Federal Savings Bank ("Empire") was a federally chartered savings bank having its principal office in Buffalo, New York, and local offices in Fort Worth, Texas.[1]

2. Plaintiff Control Management Restaurant Corporation ("Control") is a Texas corporation having its principal place of business in Fort Worth, Texas.

3. On or about July 1, 1985, Empire loaned to Thomas N. Brown and Phyllis G. Brown ("the Browns") the sum of $550,-000.00 ("the loan"). The loan was evidenced by a promissory note ("the note") and secured by a deed of trust, security agreement and financing statement ("the deed of trust") on two parcels of real estate ("the property") separately described as:

Lot 21, Block 3, North Mistletoe Addition, City of Fort Worth, Tarrant County, Texas, according to plat recorded in Volume 774, page 105, Plat Records of Tarrant County, Texas (hereinafter referred to as Lot 21)

Lot 22–R–1, Block 3, North Mistletoe Addition, City of Fort Worth, Tarrant County, Texas, according to plat recorded in Volume 388–77, page 46, Deed Records of Tarrant County, Texas (also known as 10504 Forest Park Boulevard, Fort Worth, Texas) (hereinafter referred to as Lot 22–R–1)

---

1. The parties have also stipulated that, on February 28, 1990, subsequent to the facts giving rise to this action, the Office of Thrift Supervision took control of Empire and caused the following to occur:

   (a) The Resolution Trust Corporation was appointed receiver of Empire;

   (b) The Office of Thrift Supervision issued a new charter to a *de novo* bank known as Empire Federal Savings Bank of America;

   (c) The Resolution Trust Corporation, as receiver for Empire, sold the assets of Empire to Empire Federal Savings Bank of America; and

   (d) The Office of Thrift Supervision appointed the Resolution Trust Corporation as conservator of Empire Federal Savings Bank of America. On September 28, 1990, the Office of Thrift Supervision appointed Resolution Trust Corporation as receiver of Empire Federal Savings Bank of America. The foregoing sequence of events has no bearing on the outcome of this action.

The deed of trust, perfecting Empire's lien, was first filed of record in Volume 8329, page 1227, of the Deed Records of Tarrant County, Texas, on July 10, 1985. The deed of trust was refiled on October 15, 1985, in Volume 8340, page 529, of the Deed Records of Tarrant County, Texas, to correct an incorrect plat reference.

4. On May 13, 1986, a notice of federal tax lien serial No. 131356 ("the May 13, 1986, tax lien"), issued by the Dallas office of the Internal Revenue Service was filed against the property in Volume 8547, page 527, of the Deed Records of Tarrant County, Texas. The May 13, 1986, tax lien was in the amount of $22,884.24 and covered Federal Unemployment Tax Act taxes for 1983, and Federal Insurance Contribution Tax Act taxes for the third quarter of 1984 and the first, second, and third quarters of 1985 assessed against Thomas N. Brown and Thomas N. Brown & Associates, Inc.

5. On September 3, 1986, a notice of federal tax lien serial No. 143469 ("the September 3, 1986, tax lien") issued by the Dallas office of the Internal Revenue Service was filed against the property in Volume 8672, page 698, of the Deed Records of Tarrant County, Texas. The September 3, 1986, tax lien was for the amount of $62,297.07 and covered 1980 and 1984 income taxes assessed against the Browns.

6. On September 12, 1986, the September 3, 1986, tax lien was filed a second time against the property in Volume 8683, page 1671, of the Deed Records of Tarrant County, Texas.[2]

7. On February 13, 1987, a notice of federal tax lien (serial number missing) (the "February 13, 1987, tax lien") issued by the Dallas office of the Internal Revenue Service was filed against the property in Volume 8843, page 149, of the Deed Records of Tarrant County, Texas. The February 13, 1987, tax lien was in the amount of $19,072.09 and covered a § 6672 penalty assessed against Thomas N. Brown for the tax period ending September 30, 1988.

8. The lien of Empire against the property was superior to the federal tax liens of May 13, 1986, September 3, 1986, and February 13, 1987 (hereinafter "the federal tax liens").

9. Prior to September 15, 1986, the loan made by Empire to the Browns went into default. The note was properly and legally accelerated and placed in default.

10. The deed of trust securing Empire's loan to the Browns contained a power of sale permitting the trustee to sell the property if the Browns defaulted on the note.

11. On September 15, 1986, Empire, as holder of the note, mailed a notice of proposed foreclosure sale to the Browns. The notice of proposed foreclosure sale, mailed by certified mail, scheduled the foreclosure sale for Tuesday, October 7, 1986, at the door of the Tarrant County Courthouse between the hours of 10:00 a.m. and 4:00 p.m.

12. On September 15, 1986, a notice of trustee's sale was filed with the Clerk of Tarrant County and posted at the door of the Tarrant County Courthouse. The notice of trustee's sale referenced that the Browns had defaulted on the note and that the property was to be sold Tuesday, October 7, 1986, at the door of the Tarrant County Courthouse between the hours of 10:00 a.m. and 4:00 p.m.

13. On October 6, 1986, Empire sent by both regular mail and certified mail a letter ("the notice to IRS") addressed to the Chief, Special Procedures Staff, Director of Internal Revenue, 1100 Commerce Street, Dallas, Texas, 75242. The notice to IRS was actually received by the IRS special procedures staff on October 8, 1986. The notice to IRS advised the IRS that:

(a) Empire had, after posting the property for foreclosure, discovered the existence of the federal tax liens on the property;

(b) Empire intended to pass on the scheduled October 7, 1986, foreclosure sale; and

---

**2.** Whether the second filing of the September 3, 1986, tax lien created a separate lien is not an issue addressed by the parties. Because the correct answer would not affect the judgment in this case, the Court will refer only to the September 3, 1986, tax lien.

(c) Empire intended to re-post the property for foreclosure at a later date.

14. The notice to IRS contained all of the information required in Treasury Regulation § 301.7425–3(d).

15. On June 11, 1987, Empire, as holder of the note, mailed to the Browns, via certified mail, notice that the property would be sold at foreclosure sale on Tuesday, July 7, 1987, between the hours of 10:00 a.m. and 4:00 p.m. in Tarrant County, Texas.

16. On June 11, 1987, the notice of substitute trustee's sale of the property was filed with the Clerk of Tarrant County and posted at the door of the Tarrant County Courthouse.

17. On July 7, 1987, substitute trustee Morton Herman conducted the trustee's sale of the property and conveyed the property to Empire as purchaser.

18. The July 7, 1987, substitute trustee's sale of the property was conducted in accordance with Texas law so as to be valid under Texas law against all secured creditors whose interests were junior to the interest of Empire under the deed of trust.

19. Subsequent to Empire's October 6, 1986, notice to IRS and before the substitute trustee's sale of July 7, 1986, the Internal Revenue Service did not notify Empire that Empire's notice to IRS was in any way inadequate.

20. Subsequent to Empire's October 6, 1986, notice to IRS and before the substitute trustee's sale on July 7, 1987, Empire did not provide Internal Revenue Service any additional direct notice of the substitute trustee's sale.

21. On July 27, 1988, Empire sold Lot 22–R–1 to Control. In conjunction with the July 27, 1988, sale of Lot 22–R–1 to Control, Chicago Title Insurance Company issued a title insurance policy free of the federal tax liens based upon an agreement by Empire to indemnify Chicago Title Insurance Company against a claim based upon the existence of the federal tax liens.

The Court adopts each of the stipulated facts, as set forth above, as a finding of fact by the Court.

The parties agree that Empire's lien against the property was superior to the federal tax liens, because it was first in time. *United States v. City of New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370–71, 98 L.Ed. 520 (1954). The issue in this action is whether the notice to IRS given by Empire was sufficient, pursuant to 26 U.S.C. § 7425, to cut off and discharge the federal tax liens when Empire foreclosed its lien against the property.

26 U.S.C. § 7425(b) governs the discharge of federal tax liens at nonjudicial foreclosure sales and provides in pertinent part that such liens shall be discharged if notice of the nonjudicial foreclosure sale is given in the manner prescribed in § 7425(c)(1). That section requires notice of a nonjudicial foreclosure sale to be given (in accordance with regulations prescribed by the Secretary of the Treasury) in writing, by registered or certified mail or by personal service to the Secretary not less than 25 days prior to such sale. Treas. Reg. § 301.7425–3(a), provides, generally, that the notice of sale must be directed to the district director (attention chief, special procedures staff) for the internal revenue district in which the sale is to be conducted. Treas.Reg. § 301.7425–3(d)(1) spells out the particular items to be included in the notice of nonjudicial foreclosure sale.

In this case, the parties agree and have stipulated that the notice to IRS, which was in writing, was sent by certified mail to: Chief, Special Procedures Staff, Director of Internal Revenue Service, 1100 Commerce Street, Dallas, Texas 75242. There is apparently no dispute that the notice was sent to the correct address for the internal revenue district in which the foreclosure sale was to occur and the Court so finds. The only remaining requirement is that the notice be timely and contain all of the information required by Treas.Reg. § 301.7425–3(d).

The parties have stipulated that the notice to IRS contained all the required information. The Court does not agree. Treas.Reg. § 301.7425–3(d)(1)(iii)(B) clearly requires notice of the date, time, place and terms of the proposed sale of the property.

The notice in this case can hardly be considered a notice of sale at all. The notice provides in pertinent part:

> As a result of this information [to wit: the existence of the May 13, 1986, and September 3, 1986, tax liens], we are passing on the sale scheduled for October 7th. However, we do plan to repost the property for foreclosure again at a later date.... There is a possibility that this loan may be assumed in the near future by another party. However, if that potential sale does not occur, we shall repost the property and advise all concerned.

In essence, the notice says "Empire is considering foreclosing its lien in the event that a proposed sale of the property falls through. Empire will let you know what it decides to do."

Despite the plain meaning of the notice to IRS, the parties have stipulated that the notice contained all of the information required by Treas.Reg. § 301.7425–3(d). In order to give effect to this stipulation, the Court must either assume that the parties understood the notice to IRS to be a notice of an October 7, 1986, foreclosure sale or that the parties understood the notice to be complete except for the proposed sale date. Omission of the proposed sale date would be an inadequacy waived by defendant if it failed to give notice of such inadequacy pursuant to Treas.Reg. § 301.7425–3(d)(2). Because the parties have stipulated that no such notice of inadequacy was given, the presumption that the notice was adequate would follow.

■■■■ Whether the notice to IRS contained a proposed October 7, 1986, sale date or no sale date at all, the fact is that the notice was given "not less than twenty-five (25) days prior to the date of sale", determined pursuant to Treas.Reg. 301.-7425–2(b) to be July 7, 1987. Therefore, the notice to IRS was timely. Moreover, the postponement of the scheduled sale date would not have imposed any additional duty on Empire, since Texas law does not require any notice of postponement to other secured creditors other than the reposting of the property for foreclosure and the filing of the notice of sale, which the parties have stipulated occurred. *See Hampshire v. Greeves*, 104 Tex. 620, 626, 143 S.W. 147 (1912) (holding that a junior lienholder is not entitled to notice of foreclosure by a senior lienholder). Accordingly, the federal tax liens described in the notice to IRS were extinguished by the Empire foreclosure.

■■■ The next issue is whether the February 13, 1987, tax lien was extinguished by the foreclosure of Empire's lien, since said tax lien was not described in the notice to IRS. The parties did not cite, and the Court has been unable to find, a case directly on point. Plaintiffs rely on *Whiteside v. United States*, 833 F.2d 820 (9th Cir.1987) to support their position that the February 13, 1987, tax lien was extinguished. *Whiteside* holds, as a general proposition, that the Internal Revenue Code contemplates only one notice per sale, regardless of the number of federal tax liens. That proposition is based on the premise that all of the tax liens to be extinguished be in existence at the time the notice of foreclosure is given.

In *Whiteside*, there were two federal tax liens in existence at the time plaintiffs gave notice of an upcoming foreclosure sale. The notice described only one of the liens. Because the notice was timely and otherwise met the requirements of Treas.Reg. § 301.7425–3(d), the failure to include a description of one of the existing federal tax liens was a defect. This shifted the burden to the IRS to give notice of such defect pursuant to Treas.Reg. § 301.7425–3(d)(2). 833 F.2d at 822.

This case is distinguishable from *Whiteside*, because the February 13, 1987, tax lien arose after Empire sent the notice to IRS. At the time the notice to IRS was sent, it contained a description of the federal tax liens then in existence. Because the notice was timely and contained all of the information required (according to the stipulation of the parties), the duty described in Treas.Reg. § 301.7425–3(d)(2) to inform Empire of any inadequacies did not arise. Furthermore, even if the notice was defective at the time it was given, nothing in

120

Treas.Reg. § 301.7425–3(d)(2) places a continuing obligation on defendant to notify the senior lienholder of inadequacies that subsequently arise.

In *Whiteside*, both liens were in existence at the time notice was given. In this case, however, the February 13, 1987, tax lien arose after Empire sent the notice to IRS. Notice of nonjudicial sale would not and could not have been required with regard to a federal tax lien that had not yet arisen. Consequently, a notice of sale including the description of the new federal tax lien was required to be given if such lien was filed more than thirty (30) days prior to the date of sale. Treas.Reg. § 301.7425–3(a)(2)(ii). Because such notice was not given, the February 13, 1987, tax lien was not discharged by the July 7, 1987, foreclosure sale.

The Court's judgment in accordance with this memorandum opinion shall be set forth in a separate document, signed the same date as this memorandum opinion is signed.